Ted R. DICKEY d/b/a Ted R. Dickey
Company, Appellant,

v.

Richard D. BIRD, Appellee.

No. 7232.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 25, 1963.

Rehearing Denied April 1, 1963.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellant.

Williams, Broughton & Forbis, Childress, for appellee.

CHAPMAN, Justice.

This is an appeal from a summary judgment granted by the trial court.

Ted R. Dickey d/b/a Ted R. Dickey Company sued Richard D. Bird for recovery of a real estate broker's commission alleged to be due him for the sale of the El Rancho Motel in Childress, Texas.

Appellee Bird pleaded Section 28 of Article 6573a V.T.C.S. as a bar to recovery, which article provides in part as follows:

"No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

His motion for summary judgment was supported by affidavits and depositions which he contends entitled him to the judgment rendered. Included in the motion and as a part thereof were exhibits "A", "B", and "C", being the written exclusive listing contract between the parties, a letter terminating the exclusive listing as of June 12, 1961, and the purchaser's affidavit showing Ted R. Dickey never contacted him prior to July 11, 1961, and that he contacted Mr. Bird in August thereafter and purchased the motel the following day.

■ Appellant Dickey pleaded the exclusive listing contract was cancelled but that it was continued as a general listing; that he continued to advertise the motel; that he located the purchaser; was the producing cause of the sale; and that appellee in continuing to encourage him and represent to him he had a written listing and to negotiate with prospective purchasers was estopped to assert the statute of frauds [1] as a defense. The trial court also had before it the depositions of both appellant and appellee.

The exclusive listing contract dated on April 12, 1961, provided in part as follows:

"I hereby grant and give you *the sole and exclusive* right to sell the same *for a period of sixty days from this date and thereafter until notified by me in writing.*" (All emphases herein are ours.)

It further provided that if it was sold by anyone *during said time* for the price and upon terms acceptable to the seller he would pay Mr. Dickey a brokerage commission of $10,000.

■ We believe the letter terminating the written exclusive listing contract must be construed in connection therewith and as a part thereof in order to determine if the contract by the parties was continued as

---

1. It has been held that cases construing the statute of frauds, Article 3995 V.T.C.S., are applicable in construing the similar language of the Real Estate License Act. Evans v. Shipp, Tex.Civ.App., 327 S.W.2d 679 and cases there cited.

a written general listing. If it was not then clearly the summary judgment was properly granted. It is without contradiction that the written listing contract was an exclusive listing and that the exclusive feature thereof was terminated effective June 12, 1961. If the letter terminating it is free of ambiguity, then it's academic that its construction is a matter of law for the court.

The letter of June 2, 1961, terminating the exclusive listing, omitting the formal parts, is as follows:

"In keeping with our exclusive listing contract dated April 12, 1961, this is to advise that said exclusive listing shall terminate on June 12, 1961. We would like very much for you to sell the El Rancho Motel for us, but do not feel inclined to continue the exclusive listing after June 12, and this letter is to notify you of the termination of said exclusive listing on June 12, 1961.

"With kindest personal regards, and *trusting that you can sell the El Rancho for us prior to June 12*, I remain * * "

As stated in effect by our Supreme Court in a comparatively recent decision, the law texts and court decisions contain a plethora of definitions of the words "ambiguous" and "ambiguity" and the terms are often used to denote a single lack of clarity in language. Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 and cases cited under Syl. [1].

■ That court has also said:

"If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument in-volved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction." Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980.

Then in a later decision[2] the court, after citing the Lewis case for the above holding, said:

"The converse of this is that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper one."

By way of further explanation of the two statements the court continued in the case just cited to say:

"In other words, if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous. In the latter event the contract will be enforced as written and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. * * * Neither in this latter event may the rule of strong construction against the author be invoked. That rule is applied only where a contract is open to two reasonable constructions. * * * 'The rule that expressions will be interpreted against the person using them applies only where, after the ordinary rules of interpretation have been applied, the agreement is still ambiguous.'"

■ In applying the rules of law just stated to the exclusive listing contract and the letter terminating it, the instruments do not appear to show ambiguity. The

2. Universal C. I. T. Credit Corp. v. Daniel, supra.

contract between the parties was that appellant had the sole and exclusive right to sell for a period of sixty days from April 12, 1961, *"and thereafter until notified by me in writing."* That notification was made by the June 2 letter above quoted and the exclusive listing was terminated at the end of the sixty-day period provided. Throughout the first paragraph of the letter it referred to their exclusive listing, which to that date was without question the only type listing between them. If there could have been any doubt from the first paragraph of the letter (which referred only to their exclusive listing) that by terminating the exclusive listing appellee was leaving the broker a general listing, the second paragraph seems to have completely eliminated any such inference by saying, "trusting that you can sell the El Rancho for us prior to June 12,[3] I remain * * *." If the seller was leaving the agent a general listing, that paragraph was completely surplusage, and we have no legal right to so construe it.

Our Supreme Court in Citizens National Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, 1006 has said:

"It is the duty of the court, in determining the meaning and intent of a contract, to look to the entire instrument; that is, the contract must be examined from its four corners. Stated in another way, the contract must be considered and construed as an entire instrument, and all of its provisions must be considered and construed together. It is not usually proper to consider a single paragraph, clause, or provision by itself, to ascertain its meaning. To the contrary, each and every part of the contract must be construed and considered with every other part, so that the effect or meaning of one part on any other part may be determined."

Our Court in Daltex Cattle Co. v. Hill, Tex.Civ.App., 43 S.W.2d 605 has held:

"* * * where the agent's right to sell is limited to a time certain, he is not entitled to commissions if no sale is effected, within that time, even though the owner subsequent to the expiration of the exclusive agency sells to one with whom the agent has been negotiating, unless the agency was terminated fraudulently, or the owner prevented a sale by the agent within the time specified."

There is nothing in the record to show the agency was terminated fraudulently nor that the owner prevented a sale within the time specified.

Appellant insists in effect that a fact issue was raised by the letter of June 2 which he says changed the exclusive feature to a nonexclusive written listing contract. We believe what we have already said effectively disposes of that contention.

He also insists that fact issues were raised by appellee representing to appellant that the original written contract was extended as a general listing and that it was orally extended prior to June 12, 1961.

Rule 166–A V.A.T.R., the summary judgment rule, provides that if the motion for summary judgment is made by the moving party, the adverse party prior to the day of hearing may serve opposing affidavits. The rule then provides the judgment may be summarily rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Section (e) thereof then provides that both "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively

---

3. The termination date provided for both in the contract proper and the letter.

that the affiant is competent to testify to the matters stated therein."

■ If it may be said that any oral representation made by Mr. Bird to Mr. Dickey that changed the exclusive listing to a general listing was admissible on any theory urged by appellant, such representations and oral statements would have to have been shown, if made by affidavit, to have been admissible in evidence and that affiant was competent to testify to the matters therein stated. Rule 166A—V.A.T.R.; Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 399.

Appellant made such affidavit and in it said that at the time of the sale he held a written listing signed by Mr. Bird designating him as real estate agent and by the terms of which he was to receive a commission of $10,000. He also made affidavit that Mr. Bird at no time ever cancelled the listing or asked affiant to cease his efforts to sell the property, but instead continued to encourage him to sell it. However, in his deposition he admitted the only written instruments he had between himself and Mr. Bird were the two heretofore discussed (the written exclusive listing and the termination letter), a list of daily sales of rooms in the court, and some photostatic copies of telephone calls from Oklahoma City to Childress. The list of daily sales showing a 56-day period does not show if the list was made prior to June 12, 1961, nor do they show they were sent prior to that date. He simply states in his deposition that "I have a statement from him on the daily sales of the court to a certain date."

The photostatic copies of telephone calls between Oklahoma City and Childress, some of which were between June 2 and June 12, when considered together with his deposition, furnished some evidence of the fact that he had some conversations with Mr. Bird or some of his partners by telephone between June 2 and June 12, 1961. We have very carefully studied Mr. Dickey's affidavit and deposition and have not found one word showing that Mr. Bird or

anyone authorized to do so made any oral statement between June 2 and June 12, 1961, which authorized him to continue to work on the sale of the motel under a general listing.

■ Any extention of the contract past the termination date, subject to Section 28 of Article 6573a, in order to raise a fact issue of waiver or estoppel, would have had to be made while the contract was still executory, before the expiration of the agency contract. Evans v. Shipp, Tex.Civ. App., 327 S.W.2d 679 (writ dismissed); Davis v. Freeman, Tex.Civ.App., 347 S.W. 2d 650, 655 (NWH).

■ It has also been held that an oral modification of a written contract as to extension of time which does more than just extend the time is void. Parks v. Underwood, Tex.Civ.App., 280 S.W.2d 320 (NRE). This alleged extension did more than just extend the time because it changed an exclusive listing to a general listing and failed to limit the time.

■ It is true that appellant's affidavit stated he had a written contract at the time of the sale and that at no time did appellee ever cancel the listing. Such statements are clearly conclusions of law in this record and would not be admissible in the trial on its merits under the authority of Tobin v. Garcia, supra, or Gaines v. Hamman, Tex., 358 S.W.2d 557, 562. Such statements were clearly an effort to interpret the letter of June 2, 1961. As such, they were legal conclusions that would not be admissible in evidence and a motion to strike them was filed by appellee for those reasons.

■ Further, a genuine issue of a material fact cannot be said to have been raised by allegations made in unverified pleadings in this case in view of the fact that they were controverted by other components of the summary judgment record, in the absence of admissible statements of fact in counter affidavits or other summary judgment components. Wilkinson v. Powell, 5

Cir., 149 F.2d 335; Savoy v. Graham Memorial Auditorium Ass'n, Inc., Tex.Civ. App., 329 S.W.2d 352 (NWH) and cases there cited.

 Under the record made here, if the case had been tried to a jury on its merits the court would, we believe, have been compelled to grant the movant an instructed verdict. Under such a situation then, the motion for summary judgment was proper. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500. It follows then from what we have already said that we believe appellant failed to show opposing evidentiary data sufficient to raise an issue as to a material fact and accordingly, the judgment of the trial court must be affirmed.